IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:21-cr-75 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| MASHI COLVIN, | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 44). The Government filed a Response in Opposition (Doc. 45), and Defendant filed a Reply in Support (Memorandum in Opposition to Government's Motion Seeking to Dismiss Petitioner's 28 U.S.C. § 2255, Doc. 46). Thus, the matter is ripe for review. For the following reasons, Defendant's Motion to Vacate is **DENIED**.

## BACKGROUND

On June 23, 2021, Defendant was charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Indictment, Doc. 1.) Defendant pleaded guilty on February 15, 2023, and, on October 25, 2023, was sentenced to a term of imprisonment of 36 months. (Plea Agreement, Doc. 28; Judgment, Doc. 40.) On May 2, 2024, Defendant moved to vacate his conviction on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment. (Motion, Doc. 44, Pg. ID 206.)

## LAW & ANALYSIS

Defendant requests that his conviction be set aside pursuant to 28 U.S.C. § 2255 and requests a hearing on his claims. (Motion to Vacate, Doc. 44, Pg. ID 206; Memorandum in Opposition, Doc. 46, Pg. ID 282.) As grounds for his request, Defendant argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment and as applied to him. (*Id.*) In its Response, the Government addresses both procedural and merits-based deficiencies in Defendant's argument. (Response, Doc. 45, Pg. ID 247, 249.) On procedural grounds, the Government argues that Defendant's Motion must fail because he did not raise his Second Amendment claim before the trial court or on appeal. (*Id.* at Pg. ID 247.) As for the merits, the Government points out that precedent confirms the constitutionality of § 922(g)(1) as to Defendant's conviction. (*Id.* at 249-50.) The Court will first address the Government's procedural argument and then proceed to the merits.

### I. Procedural Default

The Government relies on the Supreme Court's ruling in *Bousley v. United States*, 523 U.S. 614 (1998), in making its procedural default analysis. (Response, Doc. 45, Pg. ID 247.) In general, if a claim is not raised on direct appeal or to the trial court, it may not be raised in a collateral matter. *Massaro v. United States*, 538 U.S. 500, 503 (2003). In *Bousley*, the Court carved out an exception for this rule. 523 U.S. at 617-19. A defendant who fails to raise a claim before the trial court or on direct appeal can still raise that claim on collateral review if the petitioner shows cause and actual prejudice, or actual innocence.

2

*Id.* at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). Without such a showing, though, such claims are defaulted. *Id.* It is uncontested that Defendant did not raise his Second Amendment claims before the trial court or on direct appeal. To now bring them on collateral review, he must therefore overcome the claims' procedural default with a showing of either cause and actual prejudice or actual innocence.

### i. Cause and Actual Prejudice

Prisoners may avoid a procedural default by offering a sufficient excuse for their failure to timely raise a claim (showing "cause") and explaining why they would be harmed if they could not belatedly assert it (showing "prejudice"). *See Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020). A retelling of *Bousley* helps explain the parameters of procedural default. There, the petitioner attempted to challenge his guilty plea and conviction after the Supreme Court, subsequent to his direct appeal, issued a decision that narrowed the conduct covered by the statute of his offense. 523 U.S. at 617. The petitioner had been convicted of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). *Id.* at 616. But, after he was sentenced, the Supreme Court issued an opinion narrowing that statute to require not only possession of the firearm, but "active employment of the firearm." *Id.* Nevertheless, the petitioner could not show cause and prejudice to overcome his procedural default. *Id.* at 617. The Supreme Court found that the petitioner lacked cause to bring his defaulted claim even though the case on which he relied was handed down after his sentencing. *Id.* at 622.

The Government argues that not only have Defendant's claims defaulted, but he has also failed to show cause or prejudice in bringing the claims on collateral review.

3

(Response, Doc. 45, Pg. ID 247.) The Government points out that, unlike in *Bousley*, the Supreme Court case that Defendant cites in his Motion, *Bruen*, was handed down eight months *before* Defendant's guilty plea, and over a year prior to his sentencing. (*Id.* at 248.) Defendant thus had "ample time" to raise his Second Amendment challenge in the trial court or on direct appeal. (*Id.*) Yet, he did not.

In his Reply, Defendant argues that he has cause for his procedural default because his attorney never indicated to him that he could make a Second Amendment argument. (Reply, Doc. 46, Pg. ID 265.) While ineffective assistance of counsel can provide sufficient cause, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Haji-Mohamed v. United States,* Case No. 21-5733, 2024 WL 776116, at *8 (6th Cir. Feb. 26, 2024). In order to successfully argue ineffective assistance of counsel, Defendant must show both that "the attorney performed incompetently and that his legal malpractice prejudiced them." *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022). Defendant has provided no evidence of such ineffective assistance. Thus, Defendant's reasoning fails to show the requisite cause to overcome his procedural default. Therefore, the Court agrees with the Government that Defendant cannot show cause and prejudice to overcome his procedural default.

  **ii. Actual Innocence**

Further, the Government states that Defendant cannot show actual innocence to overcome default. (Response, Doc. 45, Pg. ID 248.) In order to show actual innocence, a petitioner must establish that "in light of all the evidence, it is more likely than not that

4

no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. In this context, actual innocence means "factual innocence, not mere legal insufficiency." *Id.* So, a defendant's "claim that § 922(g)(1) is unconstitutional cannot establish that he is actually (and factually) innocent of the charge in the indictment." *United States v. Lownsbury*, No. 5:22-CR-41, 2024 WL 4264970, at *4 (N.D. Ohio Sept. 23, 2024).

The Court also finds *Bousley* instructive as to the application of the actual innocence standard. In *Bousley*, the Supreme Court remanded the case to allow the petitioner an opportunity to present evidence of his actual innocence under the new interpretation of the statute, as it had not been addressed earlier. *Id.* at 623-24. According to the *Bousley* Court, the lower courts had not addressed whether the petitioner's firearm had a substantial connection to the crime, as required by the new interpretation. And, the petitioner only admitted in his plea agreement to "using" it, not to carrying it during the commission of the crime. *Id.* Thus, the parties could still determine, at the district court level, whether the petitioner was actually innocent. *Id.* The Government distinguishes Defendant's circumstances with those in *Bousley* by pointing out that Defendant admitted, during his plea hearing, that he possessed a firearm as a prohibited person. (Response, Doc. 45, Pg. ID 249.) Since Defendant admitted to every element of § 922(g)(1) in his plea agreement, Defendant is not factually innocent.

## II. Merits of the Second Amendment Claim

Notwithstanding the procedural default issue, Defendant's Motion still fails on the merits. Defendant argues that his conviction should be vacated since 28 U.S.C. § 922(g)(1) is unconstitutional both facially and as applied to him. He relies on the recent Supreme

5

Court case, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18 (2022), to argue that the statute violates the Second Amendment. (Motion, Doc. 44, Pg. ID 206.)

Analyzing Defendant's arguments under *Bruen* calls for examination of the preceding firearm-regulation cases. To start, in *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment guarantees an individual's right to keep and bear arms, irrespective of militia service. 554 U.S. 570, 595, 635-36 (2008). In reaching this conclusion, the Court began with a "textual analysis" of the Second Amendment's language. *Id.* at 576-78. Then, the Court assessed whether the textual conclusion was "confirmed by the historical background of the Second Amendment." *Id.* at 592. After considering English history and American colonial views, the Court found "no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Id.* at 595. The Court cautioned, however, that this right is "not unlimited" and that, although the Court did "not undertake an exhaustive historical analysis of the full scope of the Second Amendment, nothing in [the *Heller*] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 595, 626-27.

Following *Heller*, Courts of Appeals began using a "two-step" framework to analyze Second Amendment challenges. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18 (2022) (collecting cases). The first step considered the scope and history surrounding the Second Amendment. *Id.* The second step required courts to consider "how close the [challenged] law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (citation omitted). Depending on those

considerations, courts would then apply strict or intermediate scrutiny to the Government's justification for the restriction. *Id.* at 18-19.

Then, in *Bruen*, the Supreme Court expressly rejected the two-step framework adopted post-*Heller*. 597 U.S. at 19-24. Instead, the Court laid out a new two-step analysis more aligned with the intentions of *Heller*. *Id.* at 17. First, under the *Bruen* test, a court must determine whether the Amendment's "plain text covers an individual's conduct." *Id.* If so, "the Constitution presumptively protects that conduct," and "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 17, 24. If a challenged regulation fits within that tradition, it is lawful under the Second Amendment. *Id.*

Recently, the Supreme Court applied the *Bruen* analysis to determine that 18 U.S.C. § 922(g)(8) — which prohibits individuals subject to a domestic violence restraining order from possessing a firearm — was constitutional. *United States v. Rahimi*, 144 S. Ct. 1889, 1902-03 (2024). The Court noted that the *Bruen* historical test was "not meant to suggest a law trapped in amber" and that the Second Amendment allows "more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-98. A court "must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 1898. And, although it "must comport with the principles underlying the Second Amendment," the contemporary restriction "need not be a dead ringer or a historical twin." *Id.* (cleaned up). Applying this reasoning, the Court determined that historical tradition showed that "[w]hen an individual poses a clear

7

threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901. In turn, § 922(g)(8) was constitutional. *Id.* at 1902-03.

Also relevant to this discussion is the Sixth Circuit's decision in *United States v. Carey*, 602 F.3d 738 (2010). There, the Sixth Circuit held that prohibitions on felons in possession of firearms did not violate the Second Amendment. *Id.* at 740-41. In reaching this conclusion, the Court did not rely on the two-step test disavowed by *Bruen*. *See id.* Instead, the Court reasoned that "*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically *limited* in the cases of felon prohibitions." *Id.* at 741 (citation omitted). Thus, "Congress's prohibition on felon possession of firearms is constitutional." *Id.* at 741 (citation omitted).

Recently, the Sixth Circuit found that *Bruen* and *Rahimi* superseded *Carey*, but that § 922(g)(1) was nevertheless constitutional under the *Bruen* analysis. *United States v. Williams*, 113 F.4th 637, 644 (6th Cir. 2024). The Sixth Circuit engaged in an extensive historical analysis which "reveal[ed] that government in England and colonial America long disarmed groups that they deemed to be dangerous." *Id.* at 657. As such, § 922(g)(1) is facially constitutional because of "our nation's history and tradition demonstrat[ing] that Congress may disarm individuals they believe are dangerous." *Id.* Thus, under *Williams*, Defendant's facial challenge to § 922(g)(1) must fail. *Id.*

In *Williams*, the Sixth Circuit also considered § 922(g)(1)'s constitutionality as applied to certain defendants. *Williams*, 2024 U.S. App. LEXIS 21375, at *35-46. The Sixth Circuit found that "history shows that § 922(g)(1) might be susceptible to an as-applied challenge in certain cases." *Id.* at *35. The Sixth Circuit noted "several historical examples

8

authoriz[ing] the official doing the disarming, usually the local justice of the peace, to make the dangerousness determination." *Id.* Applying this historical tradition, the Sixth Circuit found that "[d]istrict judges serve the same function when they entertain as-applied challenges to § 922(g)(1)'s applicability." *Id.* (citation omitted).

"In determining whether an individual has met his burden to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope, courts . . . must focus on each individual's specific characteristics." *Williams*, 113 F.4th 637, 657 (6th. Cir. 2024). "That necessarily requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1)." *Id.* at 657-58. "Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.* at 660. "[C]ertain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* "The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Id.*

With the Sixth Circuit's directive in mind, Defendant's challenge to § 922(g)(1) fails. Defendant's prior offenses, which include violent and firearm-related crimes, such as assault, and resisting arrest, and possessing firearms while under disability, demonstrate dangerousness. (Presentencing Memorandum, Doc. 34, Pg. ID 128-33); *see also United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (finding that applicability of § 922(g)(1) requires examining the defendant's entire criminal record for dangerousness, not just the specific offense underlying the § 922(g)(1) conviction). Thus,

9

Defendant's criminal history establishes dangerousness such that disarmament under § 922(g)(1) is constitutional as applied to him. Defendant's Motion therefore fails both on procedural grounds and on its merits.

Finally, the Court will address Defendant's request for a hearing. If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Having reviewed the record in Defendant's underlying criminal case, as well as the filings here, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Defendant's claims does not require the resolution of any factual dispute.

For the foregoing reasons, Defendant's Motion to Vacate (Doc. 44) is **DENIED**. As Defendant is not entitled to relief under 28 U.S.C. § 2255(a), Defendant's request for a hearing is also **DENIED** pursuant to 28 U.S.C. § 2255(b).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *[signature]*
JUDGE MATTHEW W. McFARLAND